# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**City of Fairmont,**
**Plaintiff Below, Petitioner**

**vs) No. 18-0873** (Marion County 12-C-102)

**West Virginia Municipal League, Inc.,**
**Defendant Below, Respondent**

**FILED**

**January 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner City of Fairmont, by counsel S. Sean Murphy and Kevin V. Sansalone, appeals the September 6, 2018, order of the Circuit Court of Marion County that denied petitioner's motion to alter or amend its April 6, 2018, order that granted summary judgment to respondent, the West Virginia Municipal League, Inc., and denied petitioner's motion for partial summary judgment. Respondent, by counsel Brian K. Cochran, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2007, petitioner ("Fairmont") had trouble with its water filtration system that led to a corrective action project in 2009. One part of the corrective action project, the "Train 5" upgrades, was to be funded through "The West Virginia Municipal League Lease/Purchase Program" (the "Program"). Respondent (the "Municipal League") and a financial services company, Comvest, Ltd., Inc. ("Comvest"), established the lease/purchase Program in 1996 and terminated it in 2010.

Fairmont contacted Comvest and applied for financing for the Train 5 upgrades. There appears to be no evidence in the record below that Fairmont involved the Municipal League in its dealings with Comvest. Comvest approved Fairmont's application and, on September 8, 2009, entered into a "Master Equipment Lease/Purchase Agreement" (the "Agreement") with Fairmont. Under the Agreement, Fairmont was to order equipment from third-party vendors as it upgraded its water filtration plant. Upon delivery and acceptance of the equipment, Fairmont would send the vendor's bill to Comvest. The Agreement obligated Comvest to pay for the equipment, which had a projected total cost of $1,070,600. The Agreement gave Comvest a security interest in the water filtration equipment, and required Fairmont to send Comvest 180 monthly payments of $8,244.84, totaling $1,484,071.20.

On September 10, 2009, two days after Fairmont and Comvest signed the Agreement, Comvest assigned the Agreement to the Blue Ridge Bank (the "Bank"). That same day, the Bank

wired Comvest $1,070,600.00. Comvest promptly notified Fairmont of the assignment and directed Fairmont to send its monthly $8,244.84 payments to the Bank.

In summary, at that point, the relationship between Fairmont, Comvest, and the Bank was as follows: (1) Petitioner Fairmont would order equipment from third-party vendors; (2) once Fairmont accepted the equipment, it would send the bill for the equipment to Comvest; (3) Comvest would pay the third-party vendor for the equipment using the money provided by the Bank; and (4) Fairmont would send the Bank the $8,244.84 in monthly payments. The Municipal League was not involved in this arrangement between Fairmont, Comvest, and the Bank.

From September 2009 to March 2010, Fairmont ordered equipment from various vendors and then sent the bills for the equipment to Comvest. Comvest paid $573,054.42 to the vendors on Fairmont's behalf from the $1,070,600.00 it obtained from the Bank. However, on March 16, 2010, Fairmont discovered that Comvest had converted the remainder of the $1,070,600.00; Comvest then declared bankruptcy. As a result, Fairmont paid its vendors $506,823.06[1] out of pocket for the rest of its equipment. Fairmont attempted to renegotiate its monthly lease/purchase payments to the Bank to recoup the $506,823.06. However, the Bank refused to decrease the monthly payment amount.

On March 15, 2012, Fairmont filed a declaratory judgment action against the Municipal League and the Bank.[2] Fairmont twice amended its complaint. The first three counts of Fairmont's second amended complaint regard the Municipal League. In Count I, Fairmont alleged the Municipal League was jointly and severally liable for all the obligations of Comvest, including the obligations under the program agreement and the lease/purchase agreement. In Count II, Fairmont alleged the Municipal League was negligent in the sponsorship, marketing, and endorsement of Comvest and the Program.[3] In Count III, Fairmont alleged the Municipal League breached the

---

[1] In its brief to the Court, Fairmont states that Comvest paid vendors $573,054.42 from the $1,070,600 it obtained from the Bank, and that Fairmont paid the $506,823.06 out of pocket for its equipment. We note that $573,054.42 plus $506,823.06 equals $1,079,877.48, and not $1,070,600.00. The difference, $9,277.48, is not explained in Fairmont's brief.

[2] Fairmont also named Comvest's corporate officers, James R. Christie and H. David Cutlip, as defendants. Fairmont alleged that Mr. Christie was a corporate officer of the Municipal League.

[3] Fairmont alleged in Count II of its second amended complaint that the Municipal League (1) was negligent in the sponsorship, marketing, and endorsement of Comvest and the Program; (2) owed a duty of due care in selecting, sponsoring, and endorsing Comvest under the Program; (3) owed a duty to Fairmont to inform it of any irregularities regarding the Program, once it was aware of them; (4) knew or should have known of the irregularities regarding the Program caused by Comvest's wrongful acts/omissions; (5) negligently breached its duty by failing to use due care in the selection, sponsorship, and endorsement of Comvest under the Program, and by failing to inform Fairmont, and its other members, of Comvest's willful and wrongful acts and omissions under the Program.

terms and conditions of the Agreement between Fairmont and Comvest. For each of the first three Counts, Fairmont sought to recover the $506,823.06 it did not receive from Comvest.[4] Fairmont also sought punitive damages.

Count VI of Fairmont's complaint was a claim against the Bank. Fairmont sought a ruling that it did not have to pay the Bank the $506,823.06 converted by Comvest. The Bank filed an answer and a counterclaim demanding judgment for Fairmont's missed monthly payments, attorney's fees, and the cost of any repossession of Fairmont's equipment.

The Bank removed Fairmont's action to the bankruptcy court where it languished for nearly three years, despite Fairmont's motions to have the case remanded to the circuit court. Fairmont filed a notice of claim in the bankruptcy court for $506,823.06. On March 6, 2015, the bankruptcy court awarded Fairmont $4,738.42 from Comvest's estate. The bankruptcy court subsequently remanded the case back to the circuit court.

In the circuit court, both Fairmont and the Bank moved for summary judgment. On April 24, 2016, the circuit court granted summary judgment to Fairmont on its claims against the Bank, thereby reducing Fairmont's liability to the Bank by $506,823.06. The Bank appealed. On November 14, 2017, this Court affirmed the circuit court's order. *See Blue Ridge Bank, Inc. v. City of Fairmont*, 240 W. Va. 123, 807 S.E.2d 794 (2017). Accordingly, Fairmont did not have to pay the Bank the $506,823.06 that Comvest converted.

In the instant case, involving Fairmont and the Municipal League, the Municipal League filed a motion for summary judgment to dismiss all of Fairmont's claims. Fairmont countered with a motion for partial summary judgment asking the circuit court to find that the Municipal League and Comvest were engaged in a joint venture, and that the Municipal League was liable for any loss suffered by Fairmont due to Comvest's wrongful acts.

By order dated April 6, 2018, the circuit court granted summary judgment to the Municipal League and denied Fairmont's motion for partial summary judgment. The circuit court found that Fairmont could not "'make a sufficient showing on [the] essential element of [damages] that it has the burden to prove' as there are no actual/compensable damages to be determined by a jury." Regarding an award of attorney's fees, the circuit court found that "the Municipal League is not a losing party. Liability has only been determined against [the] Bank, and further, the entire amount of damages sought against [the Bank or the Municipal League] has been fully recovered as a result of the judgment entered against [the] Bank." "[A]s full recovery of compensable damages has been awarded against [the] Bank, there is no proper predicate award on which punitive damages or attorney's fees could be founded even if this matter against the Municipal League . . . were to proceed to trial."

Fairmont responded by filing a motion under Rule 59(e) of the West Virginia Rules of Civil Procedure, in which it asked the circuit court to alter or amend its April 6, 2018, summary

---

[4] Counts IV and V regard allegations against co-defendants Christie and Cutlip, who have not participated in this case.

judgment order in favor of the Municipal League. Fairmont alleged (1) it suffered damages over and above $506,823.06; (2) Comvest was paid $11,000 in fees for its services related to the project; and (3) since neither Comvest nor the Bank fully performed the Agreement, Fairmont received only fifty percent of the benefit it bargained for under the Agreement. Therefore, Fairmont claimed it was entitled to recover at least fifty percent, or $5,500, of the $11,000 in fees it paid to Comvest. In other words, Fairmont claimed it could show it had compensable damages. Fairmont also asserted a new theory: that it was entitled to attorney's fees because the litigation between Fairmont and the Bank was a separate collateral litigation under Section 914(2) of the Restatement of the Law of Torts, 2d.[5]

Following a hearing on Fairmont's Rule 59(e) motion, the circuit court denied the motion by order entered September 6, 2018. The circuit court rejected Fairmont's Section 914(2) argument because it was a new legal argument offered after it granted the Municipal League's summary judgment motion and, therefore, could not be considered under this Court's interpretation of Rule 59(e) in *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 717 S.E.2d 235 (2011). The circuit court also noted that West Virginia follows the American Rule, i.e., generally, litigants are responsible for paying their own attorney's fees. Finally, the circuit court ruled that Fairmont's argument – that it suffered more damages than it actually pled – was without merit because (1) there were no new facts or evidence presented that were not previously available to Fairmont, and (2) the $11,000 fee was not pled in Fairmont's complaint or any previous pleadings filed with the circuit court, the bankruptcy court, or this Court, even though Fairmont admitted it knew about the $11,000 fee.

Fairmont now appeals the circuit court's September 6, 2018, order denying its Rule 59(e) motion to alter or amend the circuit court's order granting summary judgment to the Municipal League. "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). To the extent they have been properly preserved for appeal, we review Fairmont's arguments de novo. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

On appeal, Fairmont raises one overarching assignment of error: the circuit court erred in finding that Fairmont had no actual compensable damages for a jury to determine, and in granting summary judgment to the Municipal League. Fairmont asserts four distinct arguments in support of its contention that the circuit court's decision was in error.

Fairmont first argues that it sustained damages due to Comvest's and the Municipal League's joint actions, notwithstanding the fact that the circuit court granted Fairmont's motion for summary judgment against the Bank, eliminated Fairmont's responsibility to repay $506,823.06 to the Bank, and denied the Bank's motion for summary judgment. Fairmont

---

[5] Fairmont's motion to alter or amend did not challenge the circuit court's conclusion that the Municipal League was entitled to immunity with regard to Fairmont's claim for punitive damages.

4

highlights that, because of the Municipal League's Program with Comvest, it paid Comvest $11,000 on September 23, 2009, for its services (completed and not completed). It also notes that in the August 24, 2016, order granting summary judgment to Fairmont and against the Bank, the circuit court found that neither Comvest nor the Bank performed all the duties required by the Agreement. Petitioner argues that where a party to a contract does not perform all of its duties under a contract, it has not earned all the fees contemplated by the contract. Hence, Fairmont claims that it can recover the $11,000 in fees it paid to Comvest, even though the circuit court granted Fairmont's motion for summary judgment against the Bank. Fairmont contends that, since the Agreement was about one-half performed, it is entitled to recover one-half of the fees ($5,500) from the Municipal League.

We disagree. In every pleading Fairmont filed in this case, it sought $506,823.06 in damages, i.e., precisely what it might have had to pay the Bank for Comvest's actions. In fact, in Fairmont's motion to remand made to the bankruptcy court, Fairmont said "[t]he nature or amount of the proof of claim filed by [] Fairmont would not be changed one iota by the action against the Municipal League" and that "[t]he amount Comvest diverted will always be $506,823.06." Fairmont concedes that it knew it paid Comvest the $11,000 fee pursuant to the Agreement well before it filed this case. Yet, Fairmont did not clearly claim it was entitled to $5,500 (or one-half of the $11,000 fee, for which Comvest performed half its services) from the Municipal League until it filed its Rule 59 motion – *after* this Court upheld the circuit court's order regarding the Bank, and *after* the circuit court granted summary judgment in favor of the Municipal League. We have said, "[a] motion under Rule 59(e) is not appropriate for presenting new legal arguments, factual contentions, or claims that could have previously been argued." *Mey*, 228 W. Va. at 56, 717 S.E.2d at 243.

Additionally, in its amended complaint, Fairmont sought $506,823.06 from the Municipal League, the precise amount converted by Comvest. Hence, when Fairmont prevailed against the Bank (and no longer had to pay the Bank the $506,823.06), Fairmont recovered its damages. The law does not permit a double recovery for a single injury. Syl. Pt. 7, *Harless v. First Nat. Bank in Fairmont*, 169 W. Va. 673, 289 S.E.2d 692 (1982). Thus, Fairmont is not entitled to a double recovery from the Municipal League.

Fairmont's second argument asserts that the attorney's fees it incurred in prosecuting and defending against the Bank's claim were proximately caused by the wrongful/tortious acts of Comvest and its alleged co-adventurer, the Municipal League. Fairmont contends that those attorney's fees are compensable damages.

In its order denying Fairmont's Rule 59(e) motion, the circuit court found that Fairmont could not prove it had suffered actual, compensable damages. The circuit court said, "[w]hile there may be some allegations of intentional wrongdoing with the potential for punitive damages and attorney's fees outstanding, recovery for those types of damages is predicated on an award of compensatory damages." *See* Syl. Pt. 1, in part, *LaPlaca v. Odeh*, 189 W. Va. 99, 99, 428 S.E.2d 322, 322 (1993) ("A finding of compensatory damages by a jury is an indispensable predicate to a finding of exemplary or punitive damages[.]").

Fairmont argues that the circuit court's statement is incorrect, and that it did suffer actual, compensable damages, because it received only half of the benefit it bargained for in the

Agreement and, therefore is due at least half of the $11,000 it paid to Comvest. Fairmont also argues that when one party causes another party to employ counsel to rid itself of actions taken by third parties or to defend itself against third parties, the party who caused the harm must pay the costs and fees, i.e., the compensable damages associated with the harm. Fairmont therefore claims that the attorney's fees it incurred in litigating against the Bank are compensatory damages.

In support of its argument that it can recover attorney's fees from the Municipal League, Fairmont cites to Section 914(2) of the Restatement of the Law of Torts 2d (1979), which provides:

> (1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.

> (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Fairmont states that numerous federal and state jurisdictions have adopted Section 914(2), but that West Virginia has not. Fairmont also states that, beginning with its complaint and extending through this appeal, it has consistently alleged that the Municipal League caused its damages, which include attorney's fees and costs.

We reject Fairmont's second argument because it was not preserved for appeal. Fairmont raised its Section 914(2) legal theory for the first time in its Rule 59(e) motion. As noted above, it is inappropriate to present a new legal theory in a Rule 59(e) motion if that theory could have been previously raised in the proceedings. *Mey*, 228 W. Va. at 56, 717 S.E.2d at 243.

The circuit court applied the American Rule with regard to Fairmont's request for attorney's fees. The American Rule provides: "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. Pt. 2, *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986). The circuit court found that Fairmont could not show (1) that it was entitled to any damages from the Municipal League, (2) any statutory or contractual authority to shift responsibility for its fees to the Municipal League, or (3) that it prevailed in any fashion on its claims against the Municipal League. On this record and in light of the American Rule, we find the circuit court did not err in denying Fairmont's claim for attorney fees.

Fairmont next argues that even if this Court finds that the Municipal League was not a joint-adventurer with Comvest, the Municipal League could still be liable for the attorney's fees and costs Fairmont incurred in protecting its rights against the Bank. Fairmont contends that the Municipal League owed Fairmont a duty of care, because Fairmont paid $3,200 in dues each year to be a member of the Municipal League. Further, Fairmont highlights that the Agreement between Comvest and Fairmont came about through the lease/purchase Program created by the Municipal League and Comvest. Fairmont believes that even if the Municipal League's role was limited to that of a sponsor or promoter, the Municipal League can be liable because it knew or should have known about Comvest's irregularities, and it failed to warn Fairmont about those irregularities in

dereliction of its duty. Finally, with no citation to authority, Fairmont asserts a duty of care existed because the Municipal League was a "partner" with Comvest, as defined by the West Virginia Uniform Partnership Act, West Virginia Code §§ 47B-1-1 to -7.

The record on appeal fails to support Fairmont's assertions that a joint venture or partnership existed between Comvest and the Municipal League, and that the Municipal League is liable to Fairmont because it was derelict in its duties. Both Fairmont's city manager and city finance director testified that they did not contact the Municipal League prior to executing the Agreement with Comvest. The finance director also testified that he did not submit an application to the Municipal League for the Agreement. The city manager further testified that he based his decision to contract with Comvest solely on the city finance director's recommendation. Moreover, the Comvest employee who facilitated the Agreement testified that he dealt directly with the city finance director, and that the Municipal League was not involved in this transaction. Therefore, there is no evidence to show the Municipal League was involved, in any way, in Fairmont's Agreement with Comvest. Based on this record, we reject petitioner's arguments that the Municipal League shared responsibility for Comvest's actions, or had any duty of care toward Fairmont regarding its dealings with Comvest.

Fairmont's final argument is that the litigation between it and the Bank was a procedurally separate and distinct collateral litigation from the claims it brought against the Municipal League, as contemplated by Section 914(2) of the Restatement of the Law of Torts 2d, despite the fact that Fairmont prosecuted all the claims in the same case. Fairmont contends it did so pursuant to Rule 19 of the West Virginia Rules of Civil Procedure (joinder of persons needed for just adjudication). Fairmont contends that because the cases against the Bank and the Municipal League were separate and distinct, this Court should adopt Section 914(2) and permit Fairmont to recover its attorney's fees from the Municipal League.

We have not had occasion to examine or adopt Section 914(2) of the Restatement of the Law of Torts 2d. We decline to do so now because, as previously noted, Fairmont's argument regarding the Restatement was first raised in its Rule 59(e) motion. Accordingly, because that issue was not properly preserved in the circuit court, we do not address it on appeal. *See Mey*, 228 W. Va. at 56, 717 S.E.2d at 243.

For the foregoing reasons, we affirm the September 6, 2018, order of the Circuit Court of Marion County that denied petitioner's Rule 59(e) motion to alter or amend the court's April 6, 2018, order that granted summary judgment to the Municipal League, and denied Fairmont's motion for partial summary judgment.

Affirmed.

**ISSUED:** January 13, 2020

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison